UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUN PACIFIC FARMING COOPERATIVE, INC.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>SUN WORLD INTERNATIONAL, INC.,<br><br>　　　　　Defendant.<br>_____<br>SUN WORLD INTERNATIONAL, INC., a Delaware corporation,<br><br>　　　　　Counter-Claimant,<br><br>　v.<br><br>SUN PACIFIC FARMING COOPERATIVE, INC., a California corporation; SUN PACIFIC FARMING CO., a California corporation; BERNE H. EVANS III; and RICHARD PETERS,<br><br>　　　　　Counter-Defendants.<br>_____ | 1:01-cv-6102 OWW CCC<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

This matter came before the Court for bench trial on January 27, 2009, following the remand from the Court of Appeals for the Ninth Circuit, following vacation and remand for determination of the amount of punitive damages. Plaintiff, Sun Pacific Farming

1

Cooperative, Inc., ("Sun Pacific") was represented by Klein, DeNatale, Cooper, Rosenlieb & Kimball, LLP, by T. Scott Belden, Esq. Plaintiff, Sun Pacific Farming Cooperative, Inc., a California corporation; Sun Pacific Farming Co., a California corporation; and Richard Peters were represented by The Webb Law Firm by Kent E. Beldauf, Jr., Esq.

Based on the undisputed facts set forth in the Final Pre-Trial Order, the Findings of Fact, and Conclusions of Law entered by the Court June 16, 2006, the Court of Appeals' Memorandum of Decision filed May 8, 2008, and the evidence and arguments presented by the parties at trial on January 27, 2009, including trial briefs, supplemental written argument, and Proposed Findings of Fact and Conclusions of Law on the issue of punitive damages, the Court makes the following Findings of Fact and Conclusions of Law. To the extent any Finding of Fact can be interpreted as a Conclusion of Law, or a Conclusion of Law can be interpreted as a Finding of Fact, it is so intended.

A.   <u>Relevant Procedural Background</u>

Following a bench trial and the filing of Findings of Fact and Conclusions of Law, entered June 16, 2006, the trial court found Counter-Defendants Sun Pacific Farming Cooperative, Inc., Sun Pacific Farming Company, Berne H. Evans, III, and Richard Peters, liable to Sun World International, Inc., for intentional misrepresentation, conversion, and declaratory relief regarding the ownership of the Sugraone grape variety. The Judgment entered June 16, 2006, held each of the Counter-Defendants liable to Sun World for compensatory damages in the sum of $8,064.00,

costs in the amount of $27,684.30, and punitive damages of $250,000.00.

By its Memorandum Decision filed May 8, 2008, the Court of Appeals affirmed the trial court's decision in all respects, except the amount of the punitive damages award specifically holding: "Roughly 31-to-1 ratio between the punitive damages award and compensatory damages award exceeds the outer limits that the Supreme Court has indicated would comport with due process. [A]lthough the misconduct at issue here is serious and intentional, it does not appear to be in the realm of the most egregious conduct that would otherwise support such a high damages ratio." The Court of Appeals remanded to the District Court for reconsideration and recalculation of the amount of the punitive damages award.

B. <u>Findings of Fact</u>

1. By written Agreement of Sale dated March 15, 1972, John Garabedian, Bertha Garabedian, Richard Peters, Barbara Peters, the Panoche Land Company, and the Peters & Garabedian Partnership sold specifically enumerated parcels of real estate, personal property and equipment, trademarks, patents and patent applications to Superior Farming Company.

2. The 1972 Agreement affected a transfer of "certain parcels of real property . . . certain personal property and equipment and certain patents, patent applications and trademark rights as follows:" which are listed and numbered paragraphs 1-3 of the first page of the 1972 Agreement. Those paragraphs recite the sale of specifically enumerated real property, Exhibits A, B,

C, and D to Appendix 1 of the 1972 Agreement, personal property (Exhibit E to Appendix 1 of the 1972 Agreement), patents and patent applications (Exhibit F to Appendix 1 of the 1972 Agreement) and two trademarks for the total purchase and sale price of $7,711,750.00.

3. Exhibits A-D of the 1972 Agreement specifically listed the transferred real estate. Exhibit E of the 1972 Agreement lists, in 35 pages, the over-500 transferred items of personal property. Exhibit F to the '72 Agreement is a list of the transferred patents and patent applications.

4. The Superior Seedless Sugraone vines are not described or included in the 35 pages listing the personal property and equipment that was sold in the 1972 Agreement. (Exhibit E to the 1972 Agreement).

5. The Superior Seedless/Sugraone grape variety is not highlighted in the 1972 Agreement and no portion of the Agreement specifically discusses that grape variety.

6. The only mention in the Agreement of the Superior Seedless/Sugraone grape variety is contained in Exhibit F to Appendix A1 of the '72 Agreement which is the list of the transferred patents and patent applications. The patent application is referenced at the second page of Exhibit F to Appendix 1 of the 1972 Agreement (page 108), as "GRAPEVINE 'BRENDA W. WHITE')." Grapevines of such variety are not addressed or discussed in the 1972 Agreement.

7. Superior Farming understood that John Garabedian was negotiating on behalf of the Peters & Garabedian Partnership (which was legally owned by John Garabedian and Ed Peters

[Defendant Richard's father]) for the items sold by the partnership, the trademarks, the remaining real estate, the specifically enumerated personal property and equipment, and the patents and patent applications included in the '72 Agreement were sold to Superior Farming by the Garabedians and a corporation controlled by the Garabedians.

8. Richard Peters was a party to the 1972 transaction only for the sale of two parcels of real estate to Superior Farming.

9. John Garabedian did not represent to Superior Farming that he was negotiating on behalf of Richard Peters.

10. Superior Farming made no inquiry as to who owned the properties on which the Superior Seedless/Sugraone vines were growing.

11. No Superior Farming representative discussed with Richard Peters the transfer of all Superior Seedless/Sugraone vines located on his real property.

12. Mr. Peters never represented to anyone from Superior Farming that all Superior Seedless/Sugraone vines growing on his property would be transferred to Superior Farming.

13. The issue of Richard Peters transferring all existing Superior Seedless/Sugraone vines on his real property was never raised by Superior Farming with Richard Peters.

14. Richard Peters specifically intended to retain a few Superior Seedless/Sugraone cuttings so that he could use them for cross-breeding purposes following the expiration of the Superior Seedless/Sugraone patent. He did not disclose this intent to Superior Farming.

15. Superior Farming paid a total of $7,711,750.00 for the

1972 asset purchase. None of the purchase price was allocated to the Superior Seedless/Sugraone grape variety.

16. The Mecca Ranch land on which cuttings from the Superior Seedless/Sugraone vines were planted, was not involved in the original sale transaction.

17. Richard Peters was a joint owner of the Mecca Ranch. Richard Peters owned the Superior Seedless/Sugraone vines growing there.

18. During the pruning of Superior Seedless/Sugraone vines growing on the Mecca Ranch in January of 1972, Richard Peters planted cuttings from these vines on property not involved in the 1972 transaction with Superior Farming.

19. In the 1980s Richard Peters took cuttings of the Sugraone from the vines he transplanted in 1972 and grafted them onto real property owned by Fowler Packing Company and Sam Parmigian.

20. In or about 1993 Richard Peters took cuttings from the Sugraone vines in Fowler and transplanted them to real property owned by Sun Pacific in Porterville, California.

21. Sun Pacific and Richard Peters grew at least 180 Sugraone vines at the Porterville location until August 2001. In or about March 1993 Sun Pacific and Richard Peters entered into an agreement by which Richard Peters assigned all of his right, title and interest in the Sugraone grapevines to Sun Pacific.

22. Sun Pacific commercially sold 672 boxes of Superior Seedless Grapes (Sugraone) at $12.00 a box for a total of $8,064.00.

23. Richard Peters was aware at the time of the sale

transaction that a patent application had been filed by John Garabedian on the Superior Seedless/Sugraone grape variety.

24. Richard Peters intended to use the Sugraone variety for propagation purposes following the expiration of the patent on the Sugraone.

25. Richard Peters never commercialized the Superior Seedless/Sugraone grape variety.

26. Richard Peters believed that the Sugraone variety was superior to Thompson Seedless grapes and for that reason called the Sugraone "Superior Seedless."

27. The consideration for the sale to Sun Pacific by Richard Peters of the Sugraone was that Sun Pacific agreed to pay to Richard Peters, a percentage of the revenues derived from the sale of the Sugraone variety by Sun Pacific.

28. The Sugraone agreement was a writing dated August 23, 2001, which also provided that Sun Pacific would indemnify Richard Peters in the event of litigation.

29. Richard Peters has served on the Board of Directors of Sun Pacific since before the vines were transferred.

30. Richard Peters served as a consultant for Sun Pacific for 14 years as of 2004 and had been a member of the Board of Directors as of 2004.

31. Sun Pacific initiated this lawsuit August 24, 2001, to validate its possession of the Sugraone grape variety. The complaint sought damages for violation of the Sherman Antitrust Act, patent infringement, declaratory relief, and unfair competition under California law.

32. Following its filing of the complaint in this case, Sun

Pacific stipulated to a preliminary injunction preventing its propagation and commercialization of the Superior Seedless/ Sugraone variety pending resolution of this dispute by the Court.

33. Mr. Peters' retention of the Superior Seedless/ Sugraone variety caused this lawsuit and the expense and inconvenience incurred by Sun World's defense and prosecution of this lawsuit.

34. The Ninth Circuit specifically held that the Counter-Defendants' conduct in this case does not appear to be in the realm of the "most egregious conduct that would support a high damages ratio."

35. The conduct of Richard Peters in hiding from Sun World, his movement of the vines to other properties and transfer to Sun Pacific, was not a conversion as that variety of grape, replanted by Richard Peters in other locations, was not growing on property that was sold to Sun Pacific. Rather, his pre-patent expiration (1989) activities were intended to preserve Sugraone vines for commercialization after expiration of the patent.

36. Intentional and willful patent infringement gives rise to a claim for treble damages.

37. Although Sun World dismisses the manner in which Sun Pacific presented this dispute, it is true that Sun Pacific acknowledged: the commercial value of the Sugraone; Superior Farming's prior patent rights; that Sun World had market power in the relevant market of seedless grapes and the market for the Sugraone variety; and that Sun Pacific intended immediate commercialization of the Sugraone.

38. Sun Pacific stipulated to the issuance of a preliminary

injunction after the injunction was sought by Sun Pacific.

39. Sun Pacific's possession and sale of the Sugraone was a direct result of Richard Peters' wrongful transfer of the Sugraone vines to Sun Pacific.

40. Conduct that proves the wrongful intent of Richard Peters includes that: (a) he knew that the sale transaction to Superior Farming was to convey the entire fruit and grape business of Garabedian; (b) Mr. Peters "secretly" transplanted vines from the Mecca Ranch after it was inspected for the sale, but prior to Mr. Peters' execution of the Bill of Sale, which prevented 100% of Sugraone grapes from being conveyed to Superior; (c) Mr. Peters kept secret his continued possession of the Sugraone grape after the sale.

41. The Bill of Sale signed by Peters warranted that all of the right, title, and interest in the vines and growing fruit on the real property being conveyed were within his authority to transfer and the parties intended to convey exclusive ownership and control over the Sugraone grape to Superior Farming.

42. The trial court's finding that Mr. Peters' testimony to the contrary was "not credible," was sustained on appeal.

43. The Court also found that Mr. Peters knowingly altered the condition of the Sugraone vines to be sold "by destroying exclusivity," and that he failed to disclose that fact while benefitting from the sale.

44. Mr. Peters concealed his actions and failed to disclose that he had transferred Sugraone vines for about 30 years.

45. After the patent expired in 1989, in 1993 Peters entered into the agreement for the sale of Sugraone grapes by Sun

Pacific with revenue from such sales to be paid to Mr. Peters. Mr. Peters also made an agreement with Sun Pacific that he would be indemnified in the event of litigation, which Sun Pacific initiated the following day.

46. Mr. Peters had been a consultant with Sun Pacific for 14 years and a member of its Board for 12 years as of the time of the lawsuit.

47. In calculating punitive damages, the nature and extent of damages awarded is considered; as is the ratio between actual potential harm and the punitive damage award; and the net worth and net income of the party against whom punitive damages are to be awarded is also considered.

48. This case does not entail an egregious course of conduct done with vile intentions. The 31:1 ratio originally awarded by the trial court has been found unconstitutional. The totality of facts do not justify exceeding a single digit damage ratio of compensatory damages to actual damages.

49. Here, the Ninth Circuit specifically cited cases collected in *State Farm Mut. Ins. Co. v. Campbell*, 538 U.S. 408, 424, 425, and held that, "Although the misconduct at issue here is serious and intentional, it does not appear to be in the realm of the most egregious conduct that would otherwise support such a high damages ratio." *See, id.*, (stating that "'An award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety,' and that, 'In practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.'"); *see also*, *Planned Parenthood*, 422 F.3d

| | |
|---|---|
| 1 | at 954-57, 962-63 (collecting cases discussing the propriety of |
| 2 | large punitive damages awards); *Swinton v. Potomac Corp.*, 270 |
| 3 | F.3d 794, 818-20 (9th Cir. 2001). . . ." |

50. Discussion of the Drake Larson matter is unhelpful as the parties stipulated that the outcome of that trial could not be raised in this proceeding. Exhibit 29, Final Pretrial Order filed October 30, 2003, at 49:23-27.

51. Sun World's contentions about future harm misses the mark. Here, minimal commercialization occurred, less than $10,000 in one season. Sun Pacific voluntarily brought the matter to court to attempt to ascertain the extent of Mr. Peters' transfer rights in the Sugraone. Although Mr. Peters' conduct was wrongful and deceitful, because the matter was presented by Sun Pacific to Sun World for consideration and then submitted to the judicial system. This reduced the actual potential for future harm. Defendants' conduct is not sufficiently culpable to justify more than a single digit punitive award.

52. Richard Peters is a lay person. The record is devoid of any evidence that he was knowledgeable about patents. His testimony shows he believed that once the patent expired, he would be free to commercialize the Sugraone grape variety. Even if this conduct was ignorant or reckless, he took no steps to commercialize the Sugraone until four years following the expiration of the patent.

53. Although Mr. Peters moved the Sugraone from farm to farm and kept that secret, that conduct is punishable as deceitful. This conduct did not create the huge potential for future damages suggested by Plaintiffs.

54. The overall purchase price of $7.7 million is entirely irrelevant to the evaluation of the potential for future harm if the patent was violated. Mr. Peters did nothing for 30 years to commercialize the Sugraone variety which, although not conduct amounting to mitigation, entirely avoided any financial loss to Sun World during the life of the patent.

55. Mr. Garabedian did request that Richard Peters be permitted to grow some of Garabedian's patented varieties of grape on Mr. Peters' own land after the sale transaction. This was rejected by the buyer, Superior Farming, as was the suggestion of Mr. Garabedian that Mr. Peters be licensed to grow some of the patented varieties following the sale.

56. Garadebians' request for permission to Mr. Peters to grow patented varieties was understood as a request to "commercially grow and sell" patented varieties following the transaction. Superior Farming did not want Mr. Peters to commercialize patented varieties following the transaction. Mr. Peters did not do so during the life of the patent. His first efforts to commercialize the variety occurred in 1993. These facts establish Mr. Peters' knowledge that Superior Farming refused to grant him permission to commercialize the Sugraone grape.

## CONCLUSIONS OF LAW

1. *Exxon Shipping Co. v. Baker*, 128 S.Ct. 2605, 2625-27 (2008) is a maritime case decided under Federal maritime law, however, it recognizes that punitive damages that bear no relationship to compensatory damages are not favored.

2. The *State Farm* rubric of single-digit punitive damage awards has been consistently applied by the Ninth Circuit in *Zhang v. American Gem Seafoods, Inc.*, 339 F.3d 1020, 1042 (9th Cir. 2003); *Banes LLC v. Arco Products Co.*, 405 F.3d 764 (9th Cir. 2005); and *Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 422 F.3d 949 (2005).

3. *State Farm* recognizes reprehensibility factors that must be analyzed: (1) type of harm - physical versus economic; (2) reckless disregard for health and safety of others; (3) financially vulnerable target; (4) repeated actions; and (5) intentional malice or mere accident, the following show that although wrongful and punishable, evidence bearing on the factors does not establish any significant degree of reprehensibility beyond that normally associated with intentionally deceitful conduct.

4. The <u>Type of Harm</u>, patent infringement, is economic, not physical. It is also totally redressable under the patent laws of the United States.

5. <u>Reckless Disregard for the Health and Safety of Others</u> was not practiced. Here, Peters did nothing with the wrongfully withheld Sugraone vines until after the expiration of the patent.

6. <u>A Financially Vulnerable Target</u>: Sun World, in the context of this litigation, is not financially vulnerable.

7. <u>Repeated Action</u>: other than hiding the grapevines for 30 years, there was one commercial sale of 672 boxes of Sugraone variety.

8. <u>Intentional Malice or Mere Accident</u>: the conduct here was intentional and fraudulent. It also breached the contract of

13

sale and had the purpose of trying to avoid the patent rights of Sun World. An approximately 5 times ratio, $40,000.00, is a reasonable punitive damages award and will accomplish all the purposes of the law to punish and set an example.

9.  An award of punitive damages in the amount of $40,000.00 is entered against Defendants, and each of them, to appropriately redress the deceit, concealment, and attempt to avoid the patent rights created by the sale of Sugraone in the manner described.

10.  No consideration may be given to the amount of costs recovered, attorneys fees, which were not recovered, or any sum other than the compensatory damages actually awarded to calculate the State Farm ratio. The compensatory damage award in this case was $8,064.00. An award of $40,000.00 in punitive damages results in a ratio of slightly in excess of 5:1.

11.  The conduct of Richard Peters is not significantly egregious or reprehensible as he never actually violated the Sugraone patent, never commercialized the Sugerone grape variety, and his assignee, Sun Pacific, immediately brought suit to determine whether the Sugraone variety could be commercialized after the expiration of the patents.

Defendant shall submit a form of judgment within five days following the date of electronic service of these Findings.

IT IS SO ORDERED.

Dated:   March 31, 2009              /s/ Oliver W. Wanger
                                  UNITED STATES DISTRICT JUDGE